**UNITED STATES**

v.

**Senior Airman Richard L. PHILLIPS, FR 432–13–7633, United States Air Force.**

**ACM 22486.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 8 Nov. 1978.

Decided 19 July 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Douglas H. Kohrt.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Lieutenant Colonel Merton F. Filkins.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of possessing marijuana and amphetamines, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892. The approved sentence extends to a bad conduct discharge and reduction to airman basic.

Appellate defense counsel assign one issue asserting that certain evidence was illegally seized since the deputy base commander, who authorized the search, was not neutral and detached. We disagree.

■ Defense counsel's assertion is based on testimony of the deputy base commander to the effect that at some time in the past, he had received briefings along with the base commander from the Security Police and Office of Special Investigations (OSI), concerning the status of investigations then in process, and cite *United States v. Ezell et al.*, 6 M.J. 307 (C.M.A.1979), for the proposition that these briefings prevented the deputy base commander from being the neutral and detached magistrate necessary to issue a proper authorization for search. The deputy commander testified that:

During the previous commander's tour, I had probably received the briefings as the person who made the decisions regarding many of these activities. Okay. I had a different set of responsibilities at the time. And when [the present base commander] came in, I co-received the briefings for the majority of the time for [him].

.     .     .     .     .

I attend all the briefings. All the discipline briefings, for OSI, the Judge, the Security Police. We had them on a weekly basis. However, with [the former base commander] I accepted the briefings as the man who would probably make the decision on how to proceed. With [the present base commander] I listened to all of the briefings and was always aware of all the activities, and would only make decisions in [his] . . . absence. . .

He also testified that although he did not remember the name of the informer in this case, the informer had been "connected with cases, or a case in which I had been involved in the past." However, this recollection may have been based upon his recall of the specific briefing given by the OSI agent on the reliability of the informer.

The deputy commander then related the process he used in determining the existence of probable cause for the search.

We think defense counsel's reliance on *Ezell,* supra is misplaced. There the Court of Military Appeals stated:

> We have recognized that the military commander is capable of neutrality when he is not actively involved in the investigative or prosecutorial functions which are otherwise clearly within the perimeters of command authority. . . . We have also held that, when the military commander becomes personally involved as an active participant in the gathering of evidence or otherwise demonstrates personal bias or involvement in the investigative or prosecutorial process against the accused, that commander is devoid of neutrality and cannot validly perform the functions envisioned by paragraph 152 of the Manual for Courts-Martial. (Emphasis added.)

6 M.J. at 318–9.

The key words, relative to the instant case, are those underscored above. There is no allegation here that the deputy commander was involved in any investigative or prosecutorial function *directed against the accused*; he was only involved in the day-to-day management of the disciplinary functions of his base. As was held in *United States v. Staggs,* 23 U.S.C.M.A. 111, 48 C.M.R. 672, 675 (1974):

> We are well aware that a commander's responsibility for the maintenance of order and discipline in his command requires that he direct and sometimes participate in investigations into criminal activities. He is also the individual empowered to issue search authorizations on probable cause. Nothing in this decision is intended to invalidate this long-standing practice, as we are certain that, in the ordinary course of events, a commander

is able to separate his responsibilities and maintain the requisite judicial attitude toward making determinations of the existence of probable cause. But, in this case, the evidence indicates that the station judge advocate departed from his normal role and became an active participant in gathering evidence against the accused. That participation was inconsistent with his duty to remain an impartial and detached magistrate.[1]

■■■ The mere fact that the commander had participated in routine, "status of discipline briefings" not involving a particular accused does not disqualify him from being the neutral and detached person who may authorize a search on probable cause. Certainly this is true in the absence of evidence to the contrary; indeed, unless the opposite is shown, it may be presumed that the commander is neutral and detached: i. e., that he is performing his job as he is supposed to perform it. As was held in *Wallis v. O'Kier,* 491 F.2d 1323, 1325 (10th Cir. 1974):

> [Petitioner contends] that a search warrant should be issued by one who is independent and neutral and that the Commanding Officer is not within this category. . . . It has not been shown, and the Court will not assume, that the Commanding Officer of a military installation is to be classified as a prosecutor or a policeman. We think he is neither. He is of the description given him by his title— the Commanding Officer of the personnel within his command and of the property committed to his control. To be sure, he is responsible for the maintenance of order and discipline within his command. This does not mean that he is partial, prejudiced and biased. There is no reason to suppose that he would be less willing than a magistrate that there be a fair and just administration of the law.[2]

---

1. The station staff judge advocate was delegated the authority to authorize searches in the absence of the commander. He authorized a search based upon less than probable cause on the condition that further evidence of the accused's involvement be established by a controlled buy. This was held to be error since he was involved in the process of accumulating evidence against the accused.

2. Although criticized by some, there is reason in the established military custom of making the commander the party to issue search authorizations. First, he is the person having

958

Since there is no evidence of record that the commander assumed the role of prosecutor or investigator relative to the accused here, we find that he was a neutral and detached magistrate and that the authorization to search was issued upon evidence of probable cause. *United States v. Ezell et al.,* supra; *United States v. McCarthy,* 7 M.J. 42 (C.M.A.1979); *United States v. Yongue,* 7 M.J. 43 (C.M.A.1979) and cases following.

The findings of guilty and the sentence are

AFFIRMED.

HERMAN, ORSER and ARROWOOD, Judges, concur.

overall authority over the personnel and property on his base, and, as such, is the person with the power to see that his order is carried out as he specifies. We must not forget that judicial authority in the military stems from the power of the commander; judicial orders are not self executing, they require a command line. Unlike the Article III courts, military judges have no inherent Constitutional authority to direct that actions be taken; in any confrontation with command the judge would lose. Secondly, as the senior officer on the installation, the commander is presumed to have the wisdom and discretion to make decisions affecting the welfare of his command. Hence, he is the person most likely to consider all facets of a discretionary decision before taking action. Such a presumption would not necessarily fit some other person whose sole qualification is being so removed from a factual situation as to be truly neutral and detached. The ultimate safeguard in the military practice is the second decision, made at trial by a trained and independent judge, as to neutrality and detachment of the "magistrate" and as to the existence of probable cause. Further, the military practice permits far greater exploration of the mental processes used by the "magistrate" than in the civilian society. See *United States v. Burden,* 5 M.J. 704, 709 n.7 (A.F.C.M.R.1978), pet. granted, 6 M.J. 124 (1978).